COMMONWEALTH *vs.* RICHARD ASPEN.

No. 98-P-1667.

Norfolk. January 26, 2000. - November 23, 2001.

Present: ARMSTRONG, C.J., SMITH, & BROWN, JJ.

*Rape. Indecent Assault and Battery. Assault and Battery. Practice, Criminal,*
Challenge to jurors. *Evidence,* Fresh complaint, Prior misconduct.

During the jury selection phase of a criminal trial, the judge did not err in rul-
ing that the defendant had failed to present the required showing of
impropriety after the Commonwealth had challenged seven men in its first
round of peremptory challenges, and a total of six more men in its second
and third round of challenges, where six men remained in the panel after
the first round of challenges and there was a male majority in the venire
from which the replacement jurors would be drawn, and where the jury
panel still consisted of a majority of men after the other two rounds.
[261-265]

At a criminal trial in which the judge had excluded evidence of incidents from
certain years on the grounds of being stale, where a police officer was
asked on cross-examination by the defense about the contents of a
conversation with the victim regarding one of those incidents, the Com-
monwealth was properly permitted to elicit briefly on redirect examination
other details about the incident to rebut the inference that the victim was
not credible; references by other witnesses to the excluded incidents were
fleeting and wholly devoid of any graphic detail, and thus did not create a
substantial risk of a miscarriage of justice. [265-266]

At the trial of indictments alleging rape, indecent assault and battery, and as-
sault and battery, the court erred in allowing testimony by three witnesses
regarding conversations with the victim in which she related that she had
not reported the assaults by the defendant because she feared him and
because he had made threats against her and members of her family,
because such testimony was not proper fresh complaint testimony; however,
the error was not prejudicial, where the evidence was cumulative of other
testimony and not unduly prejudicial. [266-267]

At a criminal trial, the admission of fresh complaint testimony from seven
witnesses did not create a substantial risk of a miscarriage of justice, where
the testimony of four of the witnesses amounted to a single statement from
each witness that was so lacking in color or detail that it added next to
nothing to the Commonwealth's case, and where the testimony of the other
three witnesses, while detailed, was considerably less detailed than the
victim's own testimony and the judge instructed the jury on four different
occasions regarding the limited use of fresh complaint evidence. [267-269]

At the trial of indictments alleging rape, indecent assault and battery, and assault and battery, the court did not err in admitting testimony by the victim that she had reported the sexual assaults because she was concerned that the defendant might be sexually assaulting her younger sister, where such testimony revealed the victim's state of mind, and where the judge gave strong limiting instructions to the jury as to the proper use of such evidence. [269-270]

INDICTMENTS found and returned in the Superior Court Department on August 8, 1996, and November 5, 1996.

After a motion for joinder and consolidation, the cases were tried before *Julian T. Houston,* J.

*Daniel J. Johnedis* for the defendant.

*Melissa Weisgold Johnsen,* Assistant District Attorney, for the Commonwealth.

SMITH, J. A jury in the Superior Court convicted the defendant of one count of rape of a child under sixteen, six counts of rape, two counts of indecent assault and battery, and one count of assault and battery. The victim is the defendant's stepdaughter.

On appeal, the defendant claims that the judge committed error during the jury selection process. He also contends that the judge erred by allowing in evidence (1) fresh complaint testimony and (2) testimony that the defendant might also have been sexually abusing the victim's younger sister.

1. *Facts.* We summarize the facts the jury could have found, reserving other details for discussion of the issues presented. The victim was seven years old and her brother ten years old when their mother married the defendant in 1979. In 1982, the victim's mother gave birth to a second daughter.

Starting in the summer of 1987 and continuing until 1990, the defendant, on several occasions, sexually assaulted and raped the victim. In February of 1990, the victim, then seventeen years old, moved out of the defendant's home to live with a neighbor, and eventually moved into her own apartment. The victim was rarely alone with the defendant after she moved out of his house. From 1990 to January of 1996, there were no sexual assaults on the victim by the defendant.

In January of 1996, the defendant went to the victim's apartment and sexually assaulted her. About the same time, the victim

attended a professional hockey game with the defendant. While driving the victim home from the game, the defendant stuck his finger into her vagina.

On March 18, 1996, the victim's twenty-fourth birthday, the defendant threatened to kill her if she did not have dinner with him. After dinner, the defendant took the victim home to her apartment and again raped her.

On May 25, 1996, the victim told her mother about the sexual assaults. The mother confronted the defendant, who denied the allegations. The defendant was subsequently arrested.

2. *The jury selection issue.* The defendant claims the judge committed error in the jury selection process by refusing to require the prosecutor to explain her reasons for exercising peremptory challenges that resulted in removing some males from the jury.

Under art. 12 of the Declaration of Rights of the Massachusetts Constitution, peremptory challenges cannot be used "to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community." *Commonwealth* v. *Vann Long,* 419 Mass. 798, 806 (1995), quoting from *Commonwealth* v. *Soares,* 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979).

"Gender is among the group affiliations on which peremptory challenges cannot be based." *Commonwealth* v. *Rodriguez,* 431 Mass. 804, 807 (2000), quoting from *Commonwealth* v. *LeClair,* 429 Mass. 313, 319 (1999). In addition, the equal protection clause of the Fourteenth Amendment bars the use of gender in the exercise of peremptory challenges. *J.E.B.* v. *Alabama ex rel. T.B.,* 511 U.S. 127, 129 (1994). Because the analysis under art. 12 and the Fourteenth Amendment is the same, we focus our discussion on art. 12. See *Commonwealth* v. *Vann Long, supra* at 806.

"We begin with the assumption that the exercise of a peremptory challenge is proper. This assumption is rebuttable, however, on a showing that (1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership within this group." *Commonwealth* v. *Curtiss,* 424 Mass. 78, 80 (1997), and cases cited.

"Confronted with a claim that a peremptory challenge is being used to exclude members of a discrete group, the judge must 'determine whether to draw the reasonable inference that peremptory challenges have been exercised so as to exclude individuals on account of their group affiliation.' " *Id.* at 80-81, quoting from *Commonwealth* v. *Soares, supra* at 490. Once the issue has been raised, the judge "should make a finding as to whether the requisite prima facie showing of impropriety has been made." *Commonwealth* v. *Burnett,* 418 Mass. 769, 771 (1994).

"A trial judge is in the best position to decide if a peremptory challenge appears improper and requires an explanation by the party exercising it. Therefore, 'we do not substitute our judgment [on whether the presumption has been rebutted] for [the trial judge's] if there is support for it on the record.' " *Commonwealth* v. *LeClair, supra* at 321, quoting from *Commonwealth* v. *Colon,* 408 Mass. 419, 440 (1990).

Here, the jury selection process took place over three days. After excusing some prospective jurors for cause, the judge conducted an individual voir dire of the remaining prospective jurors. After the voir dire, forty-four persons, including twenty-eight men and sixteen women, formed the venire from which members of the jury would be selected. Twelve men and four women initially were selected from the venire to serve as jurors. Each side was allowed sixteen peremptory challenges.

In its first round of challenges, the Commonwealth struck six of the twelve men and no women. The defendant objected, arguing that the prosecutor's peremptory challenges indicated a discriminatory pattern against men sitting as jurors. The judge disagreed, stating that the prosecutor's actions were not discriminatory and therefore he would not require the Commonwealth to provide a neutral explanation for the challenges. At the time the judge made his determination, six men remained in the jury box. In addition, the venire from which the replacement jurors were to be drawn consisted of sixteen men and twelve women.

Four men and two women were then selected to take the places of the challenged jurors. The Commonwealth challenged one of the men and neither of the two women replacements.

Another man was selected as a replacement for the challenged juror and was not challenged by the Commonwealth. The jury then consisted of ten men and six women, and the Commonwealth informed the judge that it was content with the composition of the jury.

The defendant then exercised seven of his peremptory challenges, eliminating two men and five of the six women from the jury. After three men and four women jurors were seated to replace the challenged prospective jurors, the defendant struck three of the women from the box. Two men and one woman were then seated, and the defendant challenged the woman. After a man was selected to replace the challenged female juror, the defendant announced that he was satisfied with the composition of the jury. At that time, the jury consisted of fourteen men and two women.

In its second round of challenges, the Commonwealth exercised peremptory challenges to five of the six male replacements and did not challenge the female replacement. At that point, the defendant renewed his objection to the Commonwealth's use of its peremptory challenges. The judge again overruled the defendant's objection.[1]

After two men and three women were seated to replace those prospective jurors challenged by the Commonwealth, the prosecutor then challenged one of the men. The defendant objected but his objection was again overruled. A woman replaced the challenged male juror. The Commonwealth then announced it was content with the composition of the jury. The jury panel at that time consisted of ten men and six women.

In the next round, the defendant challenged three of the women. After one woman and two men were chosen to replace the challenged prospective jurors, the defendant challenged one of the men. Another man was selected, and the defendant announced that he was satisfied. The jury then consisted of twelve

---

[1] The defendant argues that the judge failed to make a finding at this point that a prima facie showing of impropriety had not been made. We disagree. When defense counsel renewed his objection to the prosecutor's "pattern of exercising peremptory challenges only against men," the judge responded, "[W]ell, that's all you've given her" and noted the objection for the record. No magic words are necessary to announce the finding. See *Commonwealth* v. *Rodriguez*, 431 Mass. 804, 810 (2000).

men and four women. The Commonwealth, although it had three remaining unused peremptory challenges, also announced it was content. The deliberating jury consisted of nine men and three women.

We reject the defendant's claim that the trial judge committed error in ruling that the defendant had failed to present the required showing of impropriety after the Commonwealth had challenged seven men in its first round of challenges, and a total of six men in its second and third round of challenges.

After the Commonwealth exercised its peremptory challenges in its first round, six men remained in the panel and there was a male majority in the venire from which the replacement jurors would be drawn. In view of these facts, the judge could properly conclude that at that point gender was not shown to be the likely reason for the Commonwealth's initial challenges. See *Commonwealth* v. *LeClair*, 429 Mass. at 320-321 (where first group of seated jurors consisted of eleven men and five women and Commonwealth challenged eight men but no women, judge did not abuse discretion in finding presumption of regularity had not been rebutted where three men were not challenged and more men than women were in venire).[2]

We also reject the defendant's claim that the subsequent challenges of men by the Commonwealth required the trial judge to order the prosecutor to furnish gender-neutral reasons for those challenges. After those challenges, the jury panel still consisted of a majority of men. In fact, the jury panel that ultimately heard the matter was composed of twelve men and four women. In view of this, the defendant cannot plausibly argue that he was deprived of his right to a fair and impartial jury as a result of the Commonwealth's challenges of some of the men called to serve as jurors. See *id.* at 321 ("Any doubt that the Commonwealth's peremptory challenges [to some males] deprived the defendant of a trial before a fair and impartial jury of his

---

[2]Although the defendant relies on *Commonwealth* v. *Rodriguez*, 431 Mass. 804, 808 (2000), that case is not controlling. There, the court gave deference to and upheld the trial judge's finding of an improper gender-based challenge. See *id.* at 811. Here, by contrast, the trial judge's finding to which we owe appropriate deference is the converse, a finding that no impropriety was shown.

peers is extinguished by the fact that the final deliberating panel was made up of eleven men and one woman").[3]

3. *Fresh complaint evidence.* The defendant claims that the judge committed error in admitting fresh complaint evidence to corroborate the testimony of the victim. According to the defendant, the evidence was stale and went beyond the proper scope of fresh complaint testimony, and too many witnesses were allowed to give fresh complaint evidence.

a. *Staleness.* Prior to trial, the defendant filed a motion in limine to exclude, among other things, any fresh complaint evidence with respect to alleged sexual assaults by the defendant between the years 1987 and 1989. The judge ruled that such evidence should be excluded as stale but that other fresh complaints as to a later period could be admitted.

During the direct examination of Detective Kevin Connolly at trial, the prosecutor did not ask any questions concerning the statements the victim had made to him regarding the sexual assaults that occurred between 1987 and 1989. On cross-examination, however, defense counsel questioned Connolly about the contents of a conversation that the victim had had with him concerning a 1987 incident. The clear intent of the question was to impeach the victim's credibility. On redirect examination, the Commonwealth, over objection, was allowed to ask questions that elicited other details of the 1987 incident. The defendant claims that the latter testimony should not have been allowed in evidence because the victim's complaint was stale and excludable under the judge's pretrial order.

A defendant cannot challenge the admission of such testimony on appeal when he was the one to elicit it at trial. See *Commonwealth* v. *Spence*, 38 Mass. App. Ct. 88, 89-90 (1995) (although testimony was too stale to be admitted as fresh complaint, defendant waived any objection at trial where he used it to strengthen his argument that victim had fabricated

---

[3]The defendant claims on appeal that the fact that the deliberating jury consisted of more men than women is irrelevant because those prospective jurors who were excluded because of their gender had their right to equal protection of the laws violated.

We need not consider this argument because no sufficient showing was made that the prospective jurors were excluded because of their gender.

her story). Furthermore, on redirect examination the Commonwealth was entitled to rebut the inference that the victim was not credible by briefly eliciting other details about the 1987 incident. See *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. 515, 524 n.5 (1991). In any event, the testimony was only a short summary of the victim's testimony that she gave about the 1987 incident.

The defendant also claims that other fresh complaint witnesses were allowed to refer to the incidents of sexual assaults that occurred between 1987 and 1989. Those comments were not the subject of objections, perhaps because they were fleeting and were wholly devoid of any graphic detail. Even if erroneously admitted, the isolated comments did not create a substantial risk of a miscarriage of justice, in view of the judge's careful instructions to the jury that they could not consider the fresh complaint evidence unless they found the complaint to have been reasonably prompt in the circumstances.

b. *Scope of fresh complaint testimony.* The defendant claims that the judge committed error by allowing in evidence fresh complaint testimony that exceeded the proper scope of fresh complaint evidence.

The purpose of fresh complaint testimony "is to corroborate the victim's testimony, namely, as it relates to the credibility of the victim's testimony at trial." *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992). A fresh complaint witness is limited, however, to testifying "to the fact of the complaint and [its] details . . . ." *Commonwealth* v. *Peters*, 429 Mass. 22, 27 (1999). "By the 'details,' we mean that the witness may testify to the complainant's statements of *the facts of the assault*" (emphasis supplied). *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 874 (2001).

Here, three witnesses were allowed to testify that the victim told them that she had not reported the sexual assaults by the defendant sooner because she feared the defendant and that he had threatened to kill her and members of her family if she told anyone of the sexual assaults. That portion of their testimony was erroneously admitted as fresh complaint evidence.

Testimony that the victim reported her fear of the defendant and his threats against her was outside the scope of fresh

complaint evidence. As we have stated, the purpose of fresh complaint evidence is to corroborate the victim's testimony at trial that sexual assaults did indeed take place. Here, the testimony was admitted not to corroborate the victim's testimony that the sexual assaults took place, but for the impermissible purpose of supplying an explanation for the victim's failure to report the sexual assaults at an earlier time. See *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. at 527.

Because there was an objection to the admission of the evidence, we must determine whether the error was prejudicial. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). "An error is nonprejudicial only '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.' " *Ibid.*, quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

The victim testified directly to the various threats (including death) the defendant made to prevent her from revealing the abuse. The victim's testimony that she feared the defendant because he beat her and kept loaded handguns at various locations in the house, including one beside his bed, was corroborated by the victim's mother and her brother. Furthermore, a police officer testified that as a result of a restraining order issued after the defendant's arrest, the police removed at least twelve handguns and rifles from the house.

Both the victim and her brother testified that the defendant assumed the role of disciplining them. He would regularly use a belt or wooden paddle to strike the victim, often leaving welts and bruises on her body. On one occasion, the defendant punched the victim so hard that he knocked her to the floor.

Thus, the improper evidence was cumulative and not unduly prejudicial. See *Commonwealth* v. *Bart B.*, 424 Mass. 911, 915 (1997). We can say with fair assurance that the error in admitting evidence that was outside the proper scope of fresh complaint evidence had little or no effect upon the jury.

c. *Number of fresh complaint witnesses.* By pretrial motion,

the defendant sought to have the trial judge limit the number of fresh complaint witnesses. The judge denied the motion and seven fresh complaint witnesses were allowed to testify, without objection, as to what the victim told them about the sexual assaults. They included the victim's mother, her brother, her former boyfriend, and four police officers. On appeal, the defendant argues that the "piling on" of this fresh complaint evidence created a substantial risk of a miscarriage of justice.

"We recognize that 'repetitive testimony from several witnesses regarding the details of the complaint may lend undue credibility to the complainant's testimony.' " *Commonwealth* v. *Lorenzetti*, 48 Mass. App. Ct. 37, 42 (1999), quoting from *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 442 (1994). However, "there is no per se rule of how many fresh complaint witnesses may testify." *Commonwealth* v. *Lorenzetti, supra* at 42, quoting from *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 761 (1995). We have found fresh complaint testimony from even five witnesses to be proper. See *Commonwealth* v. *Lorenzetti, supra.* Here, seven witnesses gave fresh complaint evidence and that number demands that we give their testimony close scrutiny.

The fresh complaint testimony of four of the witnesses (the victim's mother, her former boyfriend, and two of the police officers) amounted to a single statement from each witness that the victim told them that the defendant had sexually molested her. Thus, with regard to those witnesses, the content of the fresh complaint testimony "was so lacking in color or detail that it added next to nothing to the government's case . . . . It is altogether implausible that the testimony could have been a factor" in the guilty verdicts. *Commonwealth* v. *Souther*, 31 Mass. App. Ct. 219, 222 (1991).

The fresh complaint testimony of the victim's brother principally discussed, in a summary fashion over one page of transcript, the victim's report of the hockey game incident. The other two police officers were from different towns, as the Commonwealth had alleged that the sexual assaults had taken place in two different localities. They testified to completely discrete incidents of sexual abuse within their respective jurisdictions

that were told to them by the victim. Their testimony, while detailed, was considerably less graphic than the victim's own lengthy recital of the sexual assaults by the defendant over a period of years.

Finally, the judge promptly instructed the jury on at least three occasions, and again in his final instructions, regarding the limited use of fresh complaint evidence. See *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. 213, 220 (1997) (five fresh complaint witnesses not excessive where judge repeatedly instructed jury on limited use of testimony).

In view of the substance of the fresh complaint testimony and the judge's careful limiting instructions, we hold that the number of fresh complaint witnesses in this case did not pose a substantial risk of a miscarriage of justice. However, we again urge trial judges to carefully screen the number of fresh complaint witnesses and the content of their testimony before they appear as witnesses.

4. *Testimony of victim's concern for her sister.* The victim was allowed to testify, over objection, that she reported the sexual assaults because she was concerned that the defendant might be sexually abusing her younger sister. The judge allowed the testimony on the ground that it showed the victim's state of mind as to why she reported the evidence of sexual abuse after such a long period of silence. See, e.g., *Commonwealth* v. *McKinnon*, 35 Mass. App. Ct. 398, 404-405 (1993). The defendant argues such testimony was improper and highly prejudicial, primarily citing *Commonwealth* v. *Montanino*, 409 Mass. 500, 505-507 (1991).

The defendant's reliance on *Commonwealth* v. *Montanino*, *supra*, is misplaced. In *Montanino*, the victim's testimony that he reported the abuse because he "found out that it was still going on," *id.* at 505, directly accused the defendant of, in fact, sexually abusing another, and therefore should have been excluded as highly prejudicial prior bad act evidence. Compare *Commonwealth* v. *Demars*, 38 Mass. App. Ct. 596, 598 (1995). Here, the victim's statement was merely an expression of her concern, and there was no evidence that she observed or even heard about the defendant actually abusing her younger sister.

Furthermore, unlike in *Montanino*, the judge in this case gave

strong limiting instructions to the jury as to the proper use of the evidence. Therefore, we hold the judge did not commit error in admitting the testimony.[4]

*Judgments affirmed.*

---

[4]Three of the fresh complaint witnesses testified, over objection in only one instance, that the victim told them of her concern for her sister. The admission of this testimony was error, as we have demonstrated in section 3.b. of this opinion. However, in view of the judge's strong limiting instructions, we hold that their testimony on this point did not create grounds for reversal.