# United States Court of Appeals

## For the First Circuit

No. 09-2333

THOMAS JUNTA,

Petitioner, Appellant,

v.

MICHAEL THOMPSON, Superintendent,
Massachusetts Correctional Institution - Shirley,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Chauncey B. Wood, with whom Wood & Nathanson, LLP, was on
brief for petitioner/appellant.
James J. Arguin, Assistant Attorney General, Criminal Bureau,
with whom Martha Coakley, Attorney General, were on brief for
respondent/appellee.

August 12, 2010

**TORRUELLA**, **Circuit Judge**.   In 2002, a Massachusetts Superior Court jury convicted Thomas Junta ("Junta") of involuntary manslaughter on the theory of unlawful killing by the commission of a battery.   See Mass. Gen. Laws ch. 265, § 13.   After unsuccessfully appealing his conviction, Junta petitioned for a writ of habeas corpus in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 2254.   Junta now appeals from the denial of his federal petition for habeas corpus relief.   The sole question before us is whether the Massachusetts Appeals Court's rejection of Junta's claim that the prosecution suppressed exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963) violated the deferential standard of review set forth for habeas claims in the AntiTerrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. We find it did not and thus affirm the denial of habeas corpus relief by the district court.

## I. Background

### A.  Facts[1]

On the afternoon of July 5, 2000, Junta took his ten-year old son and two friends to the Burbank Ice Arena in Reading,

---

[1]  In habeas cases, "a determination of a factual issue made by a State court shall be presumed to be correct."   28 U.S.C. § 2254(e)(1).   This presumption of correctness applies to findings of facts made by state trial and appellate courts. Teti v. Bender, 507 F.3d 50, 58-59 (1st Cir. 2007).   As a result, "[w]e describe the facts as they appear from the state court record." Id. at 53.

Massachusetts for "stick practice," an informal hockey practice. Commonwealth v. Junta, 815 N.E.2d 254, 256 (Mass. App. Ct. 2004). During the practice, Junta watched from the stands. Junta, after watching the game for a period of time, believed the game had become too rough and went down to ice-level to complain to Michael Costin ("Costin"), an adult who was participating in the practice with his three sons. Id. Costin responded, "That's hockey." Id. The men exchanged words, but no physical altercation took place at that time.

The practice ended shortly thereafter, and the players returned to the locker room. While the players were changing out of their hockey gear, Junta and Costin again confronted one another, first verbally and then physically. Other nearby adults broke up the fight. Junta departed the arena, leaving his son to finish changing in the locker room, only to return a few minutes later. Id. at 257. Upon his return, Nancy Blanchard ("Blanchard"), a rink employee, noted that Junta "appeared angry." Id. Junta found Costin, and the two men immediately began throwing punches at one another. Id.

There was conflicting trial testimony as to which of the two men was the first aggressor. Id. Junta claimed that Costin attacked him first, while witnesses for the Commonwealth alleged that it was Junta who first grabbed Costin. Id. Costin, who weighed approximately 160 pounds, wound up on the ground with

-3-

Junta, who weighed approximately 270 pounds, straddled on top of him. Id. Costin was punched numerous times in the face and elsewhere.

Also at issue at the trial was the number of blows Junta struck. Blanchard and other witnesses testified that Junta punched Costin "many, many times," while Junta and his witnesses claimed that only "two or three" punches had been inflicted. Id. Blanchard and another witness asked Junta to stop, screaming, "you're going to kill him." Id.

Costin did not succumb immediately to Junta's blows. According to several witnesses, "there was a period during that punching that [Costin] was moving, fighting, kicking, or flailing." Id. By the time that bystanders pulled Junta away from Costin, Costin was motionless. Emergency medical technicians and an advanced life support team treated Costin while en route to the hospital, but Costin died the next day.

The number and nature of the blows inflicted were viewed as crucial. "The law of [the Commonwealth of Massachusetts] recognizes unlawful-act manslaughter only if the unlawful act is a battery not amounting to a felony, when the defendant knew or should have known that the battery he was committing endangered human life." Id. (quoting Commonwealth v. Sires, 596 N.E.2d 1018, 1024 n.10 (Mass. 1992)). As a result, if Junta inflicted only a

-4-

single punch or minor blows, it would tend to negate his knowledge or imputed knowledge.

The expert testimony at trial differed as to the number of blows. Dr. Stanton Kessler of the Commonwealth's Office of the Chief Medical Examiner, the expert for the prosecution, had performed the autopsy. Dr. Kessler testified that, in addition to the numerous injuries on Costin's body, there were two areas of severe trauma: the base of the neck where the vertebral artery ruptured, cutting off twenty-five percent of the blood supply to the brain, and internal trauma to the left side of the head above the ear. Junta, 815 N.E.2d at 257. The latter injury, unrelated to the former, resulted in "severe" and "serious" bleeding of the brain. Id. The cause of death, in his opinion, was "blunt head and neck trauma, contributory factor of bronchopneumonia [i.e., fluid in the lungs]." Id. at 257-58. Although he acknowledged on several occasions that the injury to the vertebral artery could have been sustained by one blow, he testified that the tearing of the ligaments, "almost tearing the head from the neck," indicated multiple blows. Id. at 258.

Dr. Ira Kanfer, the defense expert, testified that the cause of death was rupture of the vertebral artery, a rare injury caused by minimal force, due to a single blow. Id.

## B. Procedural History

On January 11, 2002, a Massachusetts Superior Court jury convicted Junta of involuntary manslaughter on the theory of unlawful killing by the commission of a battery. Id. at 256; see Mass. Gen. Laws ch. 265, § 13. Junta was sentenced to serve six to ten years at the Massachusetts Correction Institution - Cedar Junction. Junta, 815 N.E.2d at 256.

On February 10, 2003, Junta filed a motion for new trial. In support of his motion for a new trial, Junta submitted the affidavit of Melissa Christie ("Christie"), who worked at the Office of the Chief Medical Examiner. She alleged that she had attended an American Academy of Forensic Science ("AAFS") conference in Seattle, Washington, where Dr. Kessler had given a presentation on the technique for evaluating vertebral artery trauma at autopsy.[2] During his presentation, Dr. Kessler "identified the case for the audience as being the famous 'Hockey Dad's' case in Massachusetts," and showed slides of Costin's

---

[2] In the abstract of the presentation, Through the Tight Canal Swiftly – A Review of the Technique for Evaluating Vertebral Artery Trauma Autopsy, Dr. Kessler and his co-author wrote:

> To make this diagnosis [of traumatic basilar subarachnoid hemorrhage, secondary to vertebral artery injuries] there must not be any other traumatic injury to the brain, dural coverings, spinal cord, or skull. Typical terminal events usually relate to a fight in which the victim has received only minor blows to the head from an assailant. The victim may then be witnessed to collapse, develop seizures and either die immediately or linger brain dead in a surgical intensive care unit. . . .

injuries.  Id. at 258.  He identified the rupture of the vertebral artery as the fatal injury and indicated that the injury can easily occur during a chiropractor visit.  Id.  According to Christie, "[t]here was nothing in his talk about substantial force or multiple blows having caused the rupture of Mr. Costin's vertebral artery."  Id.  Following a non-evidentiary hearing, the trial judge denied Junta's motion.  Junta filed a notice of appeal, and his two appeals -- the first from his conviction and the second from the denial of his motion for new trial -- were consolidated.  On September 23, 2004, the Massachusetts Appeals Court affirmed Junta's conviction and denied his motion for new trial.  See id. at 262.  Junta subsequently filed with the Massachusetts Supreme Court an application for leave to obtain further appellate review, which the court denied.

Having exhausted his state court remedies, on February 15, 2006, Junta filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus in the United States District Court for the District of Massachusetts.  In his petition, Junta set forth a single claim based on the prosecution's alleged failure to disclose exculpatory evidence in violation of Brady, 373 U.S. at 87.  Specifically, Junta alleged that the prosecution effectively suppressed the fact that Dr. Kessler had presented his findings in this case at an AAFS conference, and that the findings presented at the conference contradicted his trial testimony, thus depriving

Junta of valuable impeachment evidence. The district court denied the petition. Junta v. Thompson, 647 F. Supp. 2d 94, 102 (D. Mass. 2009). Junta thereafter requested, and the district court granted, a certificate of appealability on the Brady issue.

## II. Discussion

### A. Standard of Review

We review the district court's denial of habeas relief de novo. Aspen v. Bissonnette, 480 F.3d 571, 573 (1st Cir. 2007).

As a threshold matter, we must determine the proper standard of review with which to review the state court's disposition of Junta's appeal. Under AEDPA, "the level of deference owed to a state court decision [on federal habeas review] hinges on whether the state court ever adjudicated the relevant claim on the merits or not." Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) (citing 28 U.S.C. § 2254(d)). If the state court has adjudicated the claim on the merits, a federal habeas court must defer to the state court adjudication unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In contrast, a state court decision that does not address the federal claim on the merits falls beyond the

-8-

ambit of AEDPA," Clements, 592 F.3d at 52, and the habeas court reviews such a claim de novo. Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).

The Supreme Judicial Court for the Commonwealth of Massachusetts denied Junta's application for leave to obtain further appellate review, and thus, we "look through to the last reasoned decision" to determine the basis for the state court's holding. Malone v. Clarke, 536 F.3d 54, 63 n.6 (1st Cir. 2008) (internal quotations omitted). As a result, we turn to the decision of the Massachusetts Appeals Court.

As to both Dr. Kessler's presentation and the abstract of his presentation, Junta contends that we must review his Brady claims de novo. With respect to the presentation, Junta contends that the Massachusetts Appeals Court did not address whether the alleged suppression of Dr. Kessler's presentation violated Brady. As to the abstract, Junta alleges that the Massachusetts Appeals Court did not examine whether the prosecution effectively suppressed Dr. Kessler's abstract by disclosing it to defense counsel on the last page of Dr. Kessler's updated C.V. on the morning of his testimony, thereby ignoring the second prong of the Brady analysis. We disagree.

The Massachusetts Appeals Court addressed Junta's claim explaining that due process is violated under Brady "if the prosecution fails to produce 'evidence which provides some

significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness.'" Junta, 815 N.E.2d at 259. The Massachusetts Appeals Court then addressed the Brady issue, stating:

> After examining Dr. Kessler's testimony and the abstract, we conclude, as did the motion judge (who was also the trial judge), that the defendant has not met his burden. The abstract is not inconsistent with Dr. Kessler's testimony, and, moreover, the defendant overstates the factual importance of the experts' testimony in this case. Although the defendant urges that Dr. Kessler testified that multiple blows caused the rupture of the vertebral artery, he did not so testify. What led him to the conclusion of multiple blows was the fact that there were also other injuries including "the injury in the middle of the brain." He stated, "Taking into account the tearing of the small vessels in the cavity of the brain we call the ventricle. Taking into account the amount of blood and tearing of the vertebral injury and the bruising and hemorrhage in the vertebral arteries on both sides. And the hemorrhage in the neck. This is a substantial force injury. It takes a lot of trauma to tear ligaments and the ligaments at the back of the skull are torn and hemorrhaged." That the abstract reported that tearing of the vertebral artery may typically be caused by minor blows in no way contradicts Dr. Kessler's testimony that due to the severity of the injuries in this case, multiple blows were here inflicted.
>
> Perhaps even more important, the testimony of the percipient witnesses belied the claim of one or minimal blows. No witness testified

-10-

that the defendant hit Costin only once, and the defendant himself testified that there were two or three punches. Both experts pointed out that once the vertebral artery is ruptured, the victim would within seconds become unconscious or brain dead. As the trial judge pointed out in his well-reasoned memorandum denying a new trial,

"there was substantial eye testimony that the victim was still moving after a minimum of two punches. There was also substantial testimony from eyewitnesses that [the defendant] punched the victim anywhere from three up to ten or more times. Therefore, the information contained in Dr. Kessler's [a]bstract would not have provided [the defendant] with effective impeachment material."

Id. at 259-60 (footnote omitted).

A matter is "adjudicated on the merits" if there is a "decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Teti, 507 F.3d at 56 (internal quotations and citation omitted). Here, the Massachusetts Appeals Court's treatment of Junta's Brady claim constituted a final decision with res judicata effect. Additionally, the court relied on substantive grounds in reaching its decision. "Thus, this was neither a disposition on procedural grounds nor a summary disposition in which the court simply remained silent on the issue." Clements, 592 F.3d at 53.

Moreover, we have previously stated that

AEDPA's trigger for deferential review is adjudication, not explanation. When a state court has truly avoided (or merely overlooked)

-11-

the petitioner's federal claim, a federal court may step into the breach and review de novo. But judicial opacity is a far cry from judicial avoidance. It is the result to which we owe deference, not the opinion expounding it.

Id. at 55-56 (internal citation omitted). Thus, the question before us is not whether the state court opinion engaged in the comprehensive analysis typically required of "a law school examination," Rashad v. Walsh, 300 F.3d 27, 45 (1st Cir. 2002), but whether the substance of Junta's federal claims was addressed. Because we find that the Massachusetts Appeals Court addressed the effective suppression of Dr. Kessler's C.V.,[3] and the suppression of both the abstract and the substance of Dr. Kessler's presentation, through the lens of Brady, see Junta, 815 N.E.2d at 259-60, we review the state court's decision under AEDPA's deferential standard of review.[4]

---

[3] In addressing Junta's claim that the Government effectively suppressed the updated copy of Dr. Kessler's C.V. by providing a copy of the C.V. at trial, the Massachusetts Appeals Court explained that the prosecution "in fact provided defense counsel with an updated copy of Dr. Kessler's curriculum vitae on the morning of his testimony [but that] [t]here were "conflicting affidavits as to whether the prosecution had pointed out to the defense the addition of the abstract to the curriculum vitae." Junta, 815 N.E.2d at 259 n.6. The Massachusetts Appeals Court, however, did not decide whether the untimely disclosure of the C.V. amounted to an effective suppression of the C.V. Instead, the Massachusetts Appeals Court adopted the motion judge's reasoning that "even assuming all of the facts alleged by [Junta] are true, [he] has failed to show that the Commonwealth's nondisclosure of Dr. Kessler's abstract caused him prejudice.'" Id.

[4] We note that the district court reviewed Junta's Brady claim regarding the suppression of Dr. Kessler's presentation de novo.

-12-

## B.  The Brady Claim

We now turn to the merits of Junta's claim.  Junta contends that the prosecution effectively suppressed exculpatory evidence in violation of his due process rights.  Specifically, he maintains that Dr. Kessler's abstract and presentation, viewed together, provided valuable impeachment evidence because they contradicted Dr. Kessler's testimony at trial.

Junta does not contend that the state court's rejection of his Brady claim was "contrary to" clearly established Supreme Court precedent, and thus we limit our inquiry to whether the state court's decision was an "unreasonable application of" such precedent.  "A state court decision is an unreasonable application of the governing law if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case."  Aspen, 480 F.3d at 574.  The Supreme Court

---

See Junta, 647 F. Supp. 2d 94 at 99.  The district court explained that although the Massachusetts Appeals Court examined the evidence regarding the presentation, it declined to issue separate findings on materiality.  A review of the Massachusetts Appeals Court decision reveals, however, that the court addressed the substance of the presentation in light of Junta's Brady claim, but declined to issue additional findings given that the presentation had not been recorded.  Junta, 815 N.E.2d at 259 n.4.  Because we find that the Massachusetts Appeals Court addressed Junta's claim regarding Dr. Kessler's presentation in light of Brady, we decline to follow the district court's decision to review this aspect of the Massachusetts Appeals Court decision de novo.  Moreover, we note that the district court rejected Junta's claim under de novo review, finding that no Brady violation had occurred.  Junta, 647 F. Supp. 2d 94 at 102.

-13-

has emphasized that "an _unreasonable_ application of federal law is different from an _incorrect_ application of federal law." Williams v. Taylor, 529 U.S. 362, 410 (2000) (emphasis in original). Thus, "[a] decision can still be reasonable even if the reviewing court thinks it is wrong; 'unreasonable' here means something more than incorrect or erroneous." Teti, 507 F.3d at 57 (citation omitted). If there is "a close question [as to] whether the state decision is in error, then the state decision cannot be an unreasonable application." Healy v. Spencer, 453 F.3d 21, 26 (1st Cir. 2006) (internal quotation marks and citation omitted).

The clearly established law governing the mandatory disclosure of exculpatory evidence is set forth in Brady, 373 U.S. at 87. The Supreme Court has identified a three-part test for adjudicating Brady claims: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

At the outset, we note that there is a dispute as to whether the Brady obligation extends to prosecution experts, such as a medical examiner.[5] Assuming arguendo that Brady applies,

_____

[5] The Supreme Court has previously stated that the phrase "clearly established as determined by [the Supreme] Court refers to holdings, as opposed to the dicta, of [the Supreme] Court's

-14-

there is nothing to suggest that the Massachusetts Appeals Court unreasonably applied Brady.

It was not unreasonable for the Massachusetts Appeals Court to conclude that Dr. Kessler's C.V., the abstract, and the substance of Dr. Kessler's presentation were not favorable to Junta, given that they were not inconsistent with Dr. Kessler's testimony. At trial, Dr. Kessler conceded on several occasions that Costin's fatal injury, rupture of the vertebral artery, could have been caused by minimal force or a single blow. Furthermore, Dr. Kessler's opinion that Junta used substantial force was based

---

decisions as of the time of the relevant state-court decision." Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004) (internal quotation marks and citation omitted). In Kyles v. Whitley, the Supreme Court held that the prosecution's Brady obligation extends even to "evidence known only to police investigators and not to the prosecutor." 514 U.S. 419, 438 (1995). The Court noted that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Id. at 437. Junta relies, in part, on Commonwealth v. Woodward, 694 N.E.2d 1277, 1292 (Mass. 1998), for the proposition that a medical examiner is a government "agent," but this case obviously does not present "clearly established Federal law." The government, on the other hand, argues that, in addition to there not being guidance from the Court as to who may be considered to be "acting on the government's behalf," courts are divided as to whether evidence in the possession of a medical examiner may be attributed to the prosecution for Brady purposes. Compare People v. Stern, 704 N.Y.S.2d 569, 579 (N.Y. App. Div. 2000) (holding that documents in the possession of a medical examiner cannot be attributed to the prosecution because the Office of Medical Examiners is "not a law enforcement agency"), with Woodward, 694 N.E.2d at 1292 (holding that a medical examiner was "a Commonwealth agent" for purposes of a failure to preserve evidence claim). Because we assume, arguendo, that a medical examiner falls within the Brady purview and address the merits of Junta's Brady claim, we need not resolve this issue.

-15-

on all the injuries Costin incurred, not merely on the vertebral artery rupture.  Likewise, Dr. Kessler's opinion that Junta inflicted multiple blows was not based on the rupture of the vertebral artery, but on the fact that Dr. Kessler found fifteen areas of trauma throughout Costin's body.

The Massachusetts Appeals Court reasonably concluded that the materials would not have undermined Dr. Kessler's opinion that Junta had used substantial force and inflicted multiple blows.  But more importantly, as the Massachusetts Appeals Court noted, Junta "overstates the factual importance of the experts' testimony in this case." Junta, 815 N.E.2d at 259.  Junta, outweighing Costin by more than one hundred pounds, straddled Costin and "punched [him] anywhere from three up to ten or more times," even after two witnesses had screamed at Junta to stop because he was "going to kill [Costin]" and the latter remained motionless.  Id. at 257, 260.  Given these circumstances, putting aside Dr. Kessler's testimony, there was substantial evidence for the jury to conclude that Junta knew or should have known that the battery he was committing endangered Costin's life.  The materials do not call this conclusion into question.  Thus, it was not unreasonable for the Massachusetts Appeals Court to conclude that these materials did not provide effective impeachment or exculpatory evidence.[6]

_____

[6] Given that the materials are not favorable to Junta, we need not decide whether the prosecution "effectively" disclosed the abstract by providing a copy of the C.V. at trial.

In sum, we cannot say that the Massachusetts Appeals Court's treatment of the <u>Brady</u> issue was unreasonable.

### III. <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's denial of habeas relief.

**<u>Affirmed</u>**.