Korey **GRAY**, Petitioner,

v.

Bernard **BRADY**, Respondent.

Civil Action No. 06–10395–GAO.

United States District Court, D. Massachusetts.

Dec. 4, 2008.

David H. Mirsky, Mirsky & Petito, Attorneys at Law, Exeter, NH, for Petitioner.

Susanne G. Reardon, Office of the Attorney General, Boston, MA, for Respondent.

## OPINION AND ORDER

O'TOOLE, District Judge.

### I. Background

This is a petition for a writ of habeas corpus. The petitioner, Korey Gray, was convicted in the Massachusetts Superior Court of unlawfully distributing cocaine and of doing so in a public park. He appealed his convictions to the Massachusetts Appeals Court ("Appeals Court") and argued that he was entitled a new trial because the trial judge's failure to require the prosecutor to articulate his reasons for a peremptory challenge of a prospective juror resulted in a violation both of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and of Article 12 of the Massachusetts Declaration of Rights.

The Appeals Court found no error by the trial judge and affirmed the convictions. *Commonwealth v. Gray*, 61 Mass. App.Ct. 1115, 810 N.E.2d 1290 (Table), 2004 WL 1469293, at *2, 4 (Mass.App.Ct. 2004). The Massachusetts Supreme Judicial Court ("SJC") denied further appellate review. *Commonwealth v. Gray*, 442 Mass. 1107, 815 N.E.2d 1084 (Table) (Mass.2004). The Supreme Court of the United States denied his subsequent petition for a writ of certiorari. *Gray v. Massachusetts*, 544 U.S. 908, 125 S.Ct. 1599, 161 L.Ed.2d 284 (2005). He then filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues that the Appeals Court's decision

was contrary to, and involved an unreasonable application of, principles of federal constitutional law established in *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) and *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

## II. Standard of Review

■ In its decision, the Appeals Court cited only Massachusetts case law in its evaluation of Gray's claims. *See Gray*, 2004 WL 1469293, at *1. It looked to *Commonwealth v. Curtiss*, 424 Mass. 78, 676 N.E.2d 431 (1997) for the relevant rule. *Id.* at *2. In *Curtiss* the SJC said:

We begin with the assumption that the exercise of a peremptory challenge is proper. This assumption is rebuttable, however, on a showing that (1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership within this group. *See Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499, 517 (Mass.1979). *See also Commonwealth v. Hamilton*, 411 Mass. 313, 582 N.E.2d 929, 932 (Mass.1991); *Commonwealth v. Wood*, 389 Mass. 552, 451 N.E.2d 714, 719 (Mass.1983); and *Commonwealth v. Reid*, 384 Mass. 247, 424 N.E.2d 495, 499–500 (Mass.1981).

676 N.E.2d at 433. The Appeals Court in Gray's case also cited *Commonwealth v. Garrey*, 436 Mass. 422, 765 N.E.2d 725, 733 (2002), *Gray*, 2004 WL 1469293, at *1, which in turn had recited the relevant rule as stated in *Curtiss*.

While both *Curtiss* and *Garrey* contain citations to federal cases, in context the purpose of those citations seem to be rather more to show that Massachusetts and federal law on the subject are generally consistent than to adjudicate Gray's claims by application of federal law. In this re-

spect, it is noteworthy that the Massachusetts rule against the discriminatory use of peremptory challenges has its own provenance, not derived from federal cases; it was first announced in *Commonwealth v. Soares*, 387 N.E.2d at 517, several years before the federal version of the rule was adopted in *Batson v. Kentucky*, 476 U.S. 79, 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ The Massachusetts and federal rules also differ slightly. Under Massachusetts law as articulated in *Curtiss* and followed by the Appeals Court in this case, the obligation on the part of the party exercising a questioned peremptory challenge to offer a "group-neutral reason" for the challenge only arises after the judge has determined it is *likely* that there was a discriminatory reason for the challenge. *See Gray*, 2004 WL 1469293, at *2; *Curtiss*, 676 N.E.2d at 433. This is a "more rigid standard than that established by *Batson.*" *Aspen v. Bissonnette*, 480 F.3d 571, 575 (1st Cir.2007). *See also Johnson v. California*, 545 U.S. 162, 173, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) (stating that "California's 'more likely than not' standard is at odds with the prima facie inquiry mandated by *Batson* ").

Moreover, to the extent the Massachusetts standard could be understood to require a "pattern" of excluding prospective jurors of a particular demographic group, *see Curtiss*, 676 N.E.2d at 433, it is inconsistent with the federal rule. *See, e.g., Cousin v. Bennett*, 511 F.3d 334, 339 (2d Cir.2008) ("Petitioner is correct in arguing that the trial judge misunderstood *Batson* in suggesting that a 'pattern' of discriminatory strikes must be shown in order for the defendant to make a *prima facie* showing of racial motivation. The *Batson* opinion cited a 'pattern' of strikes only as an example of how the inference might be suggested. *Batson* clearly contemplates

that a *prima facie* showing of race motivation may arise from a single challenge if the circumstances sufficiently suggest the inference of race motivation. *See Batson,* 476 U.S. at 97, 106 S.Ct. 1712.").

■ Where, as here, the state standard is less favorable to a defendant than the federal standard, it cannot be presumed that the state court's adjudication according to its standard subsumed the federal standard. *Cf. McCambridge v. Hall,* 303 F.3d 24, 35 (1st Cir.2002) (stating that where "the state adheres to a standard that is more favorable to defendants than the federal standard . . ., we will presume the federal law adjudication to be subsumed within the state law adjudication").

For these reasons, I conclude that Gray's federal constitutional claim was not "adjudicated on the merits" by the state courts within the meaning of 28 U.S.C. § 2254(d). Accordingly, the statutory standard of review is not applicable, and the claim of federal constitutional error must be reviewed *de novo. See Fortini v. Murphy,* 257 F.3d 39, 47 (1st Cir.2001).

### III. Merits of the Claim

■ In *Batson,* 476 U.S. at 96–98, 106 S.Ct. 1712, the Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violative of the Equal Protection Clause of the Fourteenth Amendment:

First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez,* 500 U.S. at 358–59, 111 S.Ct. 1859 (citations omitted).[1] Under this approach, a prima facie showing is made where the circumstances under which peremptory challenges are exercised give rise "to an inference of discriminatory purpose." *Johnson,* 545 U.S. at 169, 125 S.Ct. 2410 (quoting *Batson,* 476 U.S. at 94, 106 S.Ct. 1712). "An 'inference' is generally understood to be a 'conclusion reached by considering other facts and deducing a logical consequence from them.'" *Id.* at 168 n. 4, 125 S.Ct. 2410 (quoting Black's Law Dictionary 781 (7th ed. 1999)).

At the petitioner's trial, after some potential jurors had been excused for cause, fourteen jurors were seated in the jury box. The prosecutor exercised four peremptory challenges, and the trial judge immediately raised the *Batson* question:

THE COURT: That's four challenges and three of those challenges are people of color who are black people. The defendant is a black person. Counsel for the defendant, do you wish to make any statement on that?

(Further Supp. Ans. 55.)

Counsel picked up on the invitation:

MS. CAROL: Absolutely. Out of the fourteen jurors seated here, there are five black people. He wants to strike three of them. I've reviewed their questionnaires and it seems to me that I can't see any other reason they would be stricken except for the fact that they're black people. I think that would certainly prejudice my client. I understand

---

1. Though this formulation refers to discriminatory challenges based on race, discrimination in the exercise of peremptory challenges on the basis of ethnicity and gender is subject to the same test. *See Hernandez,* 500 U.S. at 358–63, 111 S.Ct. 1859; *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

that you can strike a juror for any reason, but it has to be a legal reason. You can't just strike jurors because they're black or Hispanic. In this case my client is black and he's entitled to a jury of his peers.

(*Id.*)

The prosecutor questioned whether one of the four jurors challenged was properly considered black or Hispanic. (*Id.* 56.) The court called the juror, 9–1, to the side bar, where she identified herself as Hispanic, and not a "person of color." (*Id.* 58.) [2] The court accepted the juror's characterization of herself, as did defense counsel. (*See id.* 66.) He treated her as a member of a different "discrete group," and apparently concluded that there had not been a prima facie showing of discrimination with respect to her as there had been with respect to the black jurors. (*See id.* 68); *Gray,* 2004 WL 1469293 at *2 ("[T]he judge made an implied finding that no prima facie showing of impropriety had been made."). (*See also* Further Supp. Ans. 70 ("I really don't think the Hispanic can be considered black and I don't think the case law considers it.")) As a result, the judge readjusted the racial/ethnic numerical count and framed the issue as a challenge by the prosecutor to two of the four blacks on the panel, rather than three of the five.

As to those two challenges, the judge concluded that

[T]here has been a prima facie showing of impropriety that the pattern of conduct has developed whereby prospective jurors who have been challenged peremptorily are members of a distinct group, namely two black people, and second that there was a likelihood that

they're being excluded from the jury based solely on their group membership. (*Id.* 59–60.) Accordingly, he invited the prosecutor to give his reasons for his challenges to the two black jurors.

The prosecutor defended the two challenges he was making of black jurors. As to the first, juror 8–1, his explanation was as follows:

MR. TASSEL: When she came up to side bar, Your Honor, she had a difficult time I think answering your simple question where she lived. She appeared puzzled by your question, and when you explained further what part of the city, she appeared to say Dorchester and then something else. I didn't understand the second part of her answer. But given the fact that she had difficult [sic] answering the question in the first place and given the fact that she's from Dorchester, its is my preference because I've been a prosecutor solely in Dorchester for the past nine to ten years, I typically tend to try and not have jurors that live in the immediate area of the crime.

I think it makes problems for them being as being impartial jurors whether or not they acknowledge it to the Court, and I think they bring knowledge to the table about crime, the police in that neighborhood, the locations being discussed that I think interferes with my ability to have a completely neutral juror.

Also, I'd suggest to you that in support of my striking juror 8–1, that I also struck juror 9–4, a married white gentleman from Dorchester in the same area of the crime. He would otherwise be a

---

**2.** The colloquy with the court was:
THE COURT: Are you a person who is a person of color?
THE JUROR: No.

THE COURT: Are you Hispanic?
THE JUROR: Yes, I am.
*Id.*

model juror, I think, by the common opinion of defense counsel but for the fact that he lives in Dorchester. Now, if Your Honor is not inclined to accept my strike of juror 8–1 then I would ask to have my strike back that I exercised on juror 9–4, because if I'm going to have people from Dorchester on there by order of the Court then I might as well not strike juror 9–4.

(*Id.* 60–62.) Later, he added:

I don't mean to disparage the citizens of Dorchester, it's just my preference to have people who are clean slates sitting on the jury and that's the same reason I'm striking the other individual, 9–4, 8–1 and 9–4, they might bring knowledge about the area to the table that frankly makes them questionable as jurors. They may be great jurors because of their experiences, they may be terrible because of their experiences, but they're wild cards.

(*Id.* 66–67.)

As to the second black juror he sought to challenge, the prosecutor cited the juror's prior criminal conviction as a reason:

[W]ith respect to juror 9–2, she was convicted of unarmed robbery in 1994 and regardless of what she might say in your questioning, I do not believe that she could be completely unbiased toward the police department or towards myself. It's her prior record, and that's my position with respect to both those challenges.

(*Id.* 62.)

The judge accepted the explanation as to the latter juror.[3] However, he found that the reason offered as to juror 8–1, the black juror from Dorchester, was "not a sufficient reason for a challenge" and disallowed it. (*Id.* 68, 70.) As requested by the prosecutor, he also permitted the withdrawal of the challenge to juror 9–4, the white juror from Dorchester. The upshot was that the prosecutor exercised two peremptory challenges, excusing one of the four blacks on the panel and (so far as appears) the only Hispanic.

■ The petitioner claims that the trial judge erred, and the Appeals Court approved the error, in failing to insist that the prosecutor proffer a group-neutral explanation for his peremptory challenge of the Hispanic juror, the second step of the three-part *Batson* procedure. The judge did not demand a justification for the challenge because he found that step one, the prima facie showing, had not been satisfied.

The petitioner makes two arguments why it was error for the trial judge not to ask for a justification for the prosecution's challenge of juror 9–1. First, he argues that the judge erred in thinking that a prosecution challenge to a Hispanic juror would not violate the *Batson* rule where the defendant was black, contrary to the teaching of *Powers*, 499 U.S. 400, 111 S.Ct. 1364, and the Appeals Court erred in upholding that error. There is simply no support in the record for this argument. The decisions by the state courts at both the trial and appellate levels was not that a prima facie showing as to juror 9–1 was lacking because she was not black like the defendant, but rather because she was not black like the other challenged jurors. There is not a hint of a *Powers* violation in the record.

---

**3.** THE COURT: ... [T]he Commonwealth on juror sitting in seat number eleven, number 9–2, he indicated that she had a prior criminal record of either an armed or unarmed robbery. The Court indicates now and so rules that that is sufficient reason to exercise his peremptory challenge. (*Id.* 67–68.)

The petitioner's second argument is his more intriguing one: In light of the prima facie indication of discriminatory use of challenges with respect to black jurors, the decision of the prosecution to challenge as well the sole Hispanic juror should have led the state courts to find, prima facie, intentional discrimination against *minority* jurors. In other words, where there was a prima facie case of discrimination against jurors of one discrete group, as the judge found, he should also have drawn an inference of discriminatory purpose when the only juror in another discrete group was challenged. Call it the additive property of discriminatory intent.

■ If the challenge to the Hispanic juror was properly evaluated by itself, without reference to challenges made to black jurors, there is not much question that the state courts' evaluation was not incorrect. The striking of the sole juror falling within a particular group designation may indeed support an inference of discriminatory intent, but the inference must arise from circumstances in addition to the simple fact of the strike itself. *See United States v. Bergodere,* 40 F.3d 512, 516 (1st Cir.1994). There is nothing in the record to suggest any motive on the part of the prosecution to exclude Hispanics as such.

A prima facie showing that the prosecution was using group membership to exclude members of a different group, however, might be the kind of additional circumstantial evidence that would lead a judge to draw an inference of a more generalized discriminatory intent, aimed at members of more than one group. Or, contrariwise, there might be other circumstances about the particular case—the nature of the offense, the personalities of the trial counsel, the backgrounds of witnesses, perhaps even some more vague sense of local racial politics—that would

lead the judge not to make that inference. Guiding cases are emphatic that whether to draw an inference of discriminatory use of peremptories is an intensely case- and fact-specific question, with significant regard given to the trial judge's ability to make observations of all the trial participants and to rely on those observations in deciding whether to draw the proposed inference. *See, e.g., Hernandez,* 500 U.S. at 364, 111 S.Ct. 1859; *Batson,* 476 U.S. at 97, 106 S.Ct. 1712; *Brewer v. Marshall,* 119 F.3d 993, 1004 (1st Cir.1997); *Bergodere,* 40 F.3d at 517. In the circumstances of this case, it was possible to draw an inference of bias toward the Hispanic juror, but such an inference was not compelled. As a matter of inference-drawing by a fact-finder, there was no error by the trial judge, or by the Appeals Court, in declining to draw an inference of discriminatory targeting of the lone Hispanic juror because she could broadly be considered a "minority," like the black jurors.

What the petitioner apparently proposes, however, is not just alternate fact-finding but a rule of law. He argues that the state courts failed "to treat the ethnicity of the Hispanic juror as equivalent to race for the purposes of determining whether an Equal Protection violation under *Batson* had occurred." (Mem. in Supp. of Pet. for Writ of Habeas Corpus at 17 (relying on *Hernandez.*)) To the extent that this is a claim that peremptory challenges of jurors who variously fall with different "discrete groups" must be amalgamated for purposes of the *Batson* rule, the response must simply be that, so far at least, neither the Supreme Court nor, so far as I have been able to find, any other federal court, has adopted that view of the law. The very use, repeatedly, of the term "discrete group" rather points in an opposite direction.

The state courts separately evaluated the petitioner's claims that the prosecution was using peremptory challenges to exclude black jurors and to exclude the sole Hispanic juror, and found merit in the former but not the latter. Such separate factual consideration of the claims was consistent with the current state of the law under *Batson.* Whether a new rule such as that proposed by the petitioner might be adopted is not a question germane to the present petition. *See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Kater v. Maloney,* 459 F.3d 56, 59 (1st Cir.2006) ("[T]he claims of habeas petitioners, even on de novo review under *Fortini,* continue to be limited by the principles laid out in *Teague v. Lane* and its progeny . . . .") (citation omitted); *see also, Whorton v. Bockting,* 549 U.S. 406, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

## IV. Conclusion

For the foregoing reasons, the petitioner's claims lack merit, and the petition for a writ of habeas corpus is DENIED.

It is SO ORDERED.