# United States Court of Appeals

## For the First Circuit

No. 08-2548

KOREY GRAY,

Petitioner, Appellant,

v.

BERNARD BRADY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Boudin and Selya, Circuit Judges,
and Laplante,[*] District Judge.

David H. Mirsky for petitioner-appellant.
Amy L. Karangekis, Assistant Attorney General, Commonwealth of
Massachusetts, with whom Martha Coakley, Attorney General, was on
brief, for respondent-appellee.

January 25, 2010

---

[*]Of the District of New Hampshire, sitting by designation.

**LAPLANTE**, **District Judge.** Korey Gray appeals the district court's denial of his petition for a writ of habeas corpus from his state-court convictions for distributing cocaine and for doing so in a public park. The appeal presents a single issue: whether the state courts violated Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny, Hernandez v. New York, 500 U.S. 352 (1991), and Powers v. Ohio, 499 U.S. 400 (1991), by permitting the prosecutor's peremptory challenge to an Hispanic juror without demanding a race-neutral explanation. We affirm.

## I.

Gray, who is African-American, was charged with unlawfully distributing cocaine under Mass. Gen. Laws ch. 32A(c) and unlawfully distributing cocaine in a public park under Mass. Gen. Laws ch. 94C, § 32J. Gray allegedly sold $20 worth of crack cocaine to an undercover police officer in a park in Boston's Dorchester neighborhood. He was tried before a jury in Suffolk County Superior Court.

During jury selection, the Commonwealth and Gray were entitled to use a maximum of six peremptory challenges each. After the prosecutor began by striking four jurors, the court commented, "[t]hat's four challenges and three of those challenges are people of color who are black people. The defendant is a black person." Defense counsel responded, "Out of the fourteen jurors seated here, there are five black people. He wants to strike three of them . .

. . I can't see any other reason they would be stricken except for the fact that they're black people . . . . You can't just strike jurors because they're black or Hispanic . . . . [M]y client is black and he's entitled to a jury of his peers."

In response, the prosecutor first claimed that one of the jurors "was not properly termed an African-American," so that the Commonwealth had in fact stricken only two out of four black jurors, not three out of five. The court summoned that juror to sidebar and asked her whether she was "a person of color." The juror answered no, but answered yes when the court asked whether she was Hispanic. The court remarked, "So basically we have . . . two black persons who are being challenged." Defense counsel responded, "We're going to end up with one black juror"--because she intended to peremptorily challenge the other one due to his membership in a police union--and that this had occurred because the prosecutor had stricken the other African-American jurors "solely because they're black."

The court agreed, announcing, "there has been a prima facie showing of impropriety that the pattern of conduct has developed whereby prospective jurors have been challenged peremptorily are members of a distinct group, namely two black people, and . . . there [is] a likelihood that they're being excluded from the jury based solely on their group membership."

Thus, the court called upon the prosecutor to offer "a neutral reason for challenging the two jurors."

The prosecutor explained that he had challenged one of the black jurors because she lived in the neighborhood of the alleged crimes, which in his experience created the threat of "knowledge about the area . . . that frankly makes [jurors] questionable." He pointed out that he had used another of his peremptory challenges on a married white male juror from the same neighborhood, who "would otherwise be a model juror . . . but for the fact that he lives in Dorchester." The prosecutor suggested that, if his challenge to the African-American juror from Dorchester was nevertheless disallowed, he should be entitled to withdraw his challenge to the white juror from Dorchester "because if I'm going to have people from Dorchester on there by order of the Court then I might as well not strike" the white juror. The prosecutor explained that he had stricken the other African-American juror because she had a prior conviction for robbery.

In rebuttal, defense counsel argued, "we're going to end up with a totally white jury" because "the Commonwealth is striking people of different ethnic backgrounds," citing to the Hispanic juror as an example. That led to the following colloquy between defense counsel and the court:

> MS. CAROL: [T]here are nine white people and he challenged one.

> THE COURT: He also challenged the Hispanic person, didn't he?
>
> MS. CAROL: Yes, but she's not white or Caucasian. I'd say she's closer to a black person.

Defense counsel did not ask the court to require the prosecutor to give a race-neutral reason for striking the Hispanic juror, and the court did not do so. During voir dire, though, that juror had revealed that she "was just recently a defendant" in a criminal case, but was found qualified to serve when she said that her own experience would not affect her ability to render a fair and impartial verdict on the charges against Gray.

The court then allowed the Commonwealth's challenge to the African-American juror who had the robbery conviction, but disallowed its challenge to the African-American juror who lived in the neighborhood where the crimes occurred. The court did, however, permit the prosecutor to withdraw his peremptory challenge to the white juror from that neighborhood, leaving the Commonwealth with three unused strikes. The prosecutor used one of those against a juror whose race is not apparent from the record. The prosecutor also attempted to strike another African-American juror, but that was disallowed when the Superior Court deemed it discriminatory, rejecting the prosecutor's explanation that he had stricken that juror out of a concern that she harbored "resentment toward law enforcement officials" due to her recent layoff from her

job as an airport security screener.  The prosecutor did not use his sixth and final peremptory challenge.

As to the Hispanic juror, the court noted that it had "asked her whether or not she was a person of color and she indicated that she was not and that she was in fact a Hispanic person."  When defense counsel protested that "a Hispanic group is another ethnic group similar to the black group," the court responded, "I really don't think the Hispanic can be considered black and I don't think the case law considers it."

Trial proceeded, and Gray was convicted on both counts, ultimately receiving consecutive sentences of 42 months on the distribution count and 30 months on the distribution in the park count.  Gray appealed his convictions, claiming, in relevant part, that the Superior Court had acted in derogation of the Equal Protection Clause of the Fourteenth Amendment, as well as Article XII of the Massachusetts Declaration of Rights, by "fail[ing] to require the prosecutor to articulate his reasons for his peremptory challenge of [the] Hispanic prospective juror."

The Massachusetts Appeals Court affirmed in an unpublished opinion.  Massachusetts v. Gray, 810 N.E.2d 1290 (table), 2004 WL 1469293 (Mass. App. Ct. 2003).  While "peremptory challenges are presumed to be proper," the court explained, that "presumption may be rebutted by a showing that '(1) there is a pattern of excluding members of a discrete group and (2) it is

likely that individuals are being excluded solely on the basis of their membership within this group.'" Id. at *2 (quoting Massachusetts v. Curtiss, 676 N.E.2d 431, 433 (Mass. 1997)). "[O]nly once the judge determines that it is likely that a juror has been excluded for these reasons will the burden shift to require the challenging party to offer a 'group-neutral reason for the challenge.'" Id. (quoting Massachusetts v. Garrey, 765 N.E.2d 725, 733 (Mass. 2002)).

Noting the Superior Court's ruling that a "preliminary showing of impropriety as to African-American prospective jurors had been made," the Appeals Court rejected Gray's claim that this "finding as to those prospective jurors should have extended to the Commonwealth's challenge to the Hispanic juror." Id. First, the court observed that, under Massachusetts law, Hispanics are neither "members of the black race nor are they a separate race," but rather "members of an ethnic class." Id. (citations omitted). Second, the Appeals Court reasoned that the Superior Court "made an implied finding that no prima facie showing of impropriety had been made" when it "allowed the Commonwealth's challenge to the Hispanic prospective juror and refrained from asking the prosecutor a reason for his challenge," and that this "implied finding is clearly supported by the record." Id. (citing Massachusetts v. Suarez, 794 N.E.2d 647, 650 (Mass. App. Ct. 2003)).

Following his unsuccessful appeal, Gray filed an application for further appellate review by the Massachusetts Supreme Judicial Court, which was denied, 815 N.E.2d 1084 (Mass. 2004), and a petition for a writ of certiorari from the United States Supreme Court, which was likewise denied, 544 U.S. 908 (2005). He then filed a petition for a writ of habeas corpus in the district court, see 28 U.S.C. § 2254, claiming that the state courts had violated the Equal Protection Clause of the Fourteenth Amendment "by permitting [the] prosecutor to use a peremptory challenge to exclude a[n] Hispanic prospective juror where [the] prosecutor was discriminating against the selection of non-white persons as jurors." The district court denied the petition in a written order. Gray v. Brady, 588 F. Supp. 2d 140 (D. Mass. 2008).

At the outset, the district court determined that Gray's federal equal protection claim had not been "adjudicated on the merits" by the state courts so as to trigger the deferential standard of review under 28 U.S.C. § 2254(d)(1), part of the Antiterrorism and Effective Death Penalty Act of 1996.[1] Id. at 144. The district court reasoned that, because the federal and Massachusetts rules on challenging the use of peremptory challenges

---

[1]Section 2254(d)(1) provides that a federal court cannot issue a writ of habeas relief from a state-court conviction "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" (formatting altered).

based on a juror's protected status "differ slightly," the state courts' resolution of Gray's claim under Massachusetts law had not "subsumed the federal standard." Id. Thus, the district court concluded, Gray's federal constitutional claim had not been "adjudicated on the merits" by the state courts and therefore would be reviewed in federal court de novo. Id.

The district court nevertheless denied Gray's claim on the merits, rejecting his "two arguments why it was error for the [Superior Court] not to ask for a justification for the prosecution's challenge to" the Hispanic juror. Id. at 145. The court found "simply no support in the record" for Gray's first argument: that the Superior Court had gone no further because of its erroneous belief "that a prosecution challenge to a[n] Hispanic juror would not violate the Batson rule where the defendant was black, contrary to the teaching of Powers." Id. The district court explained that the Superior Court had found no prima facie showing as to the Hispanic juror not "because she was not black like the defendant, but because she was not black like the other challenged jurors." Id.

The district court also rejected Gray's second argument, namely, that the state courts should have found "prima facie, intentional discrimination against minority jurors"--including the Hispanic juror--based on the prima facie showing of intentional discrimination against the African-American jurors. Id. at 146.

The district court allowed that a prima facie showing of discriminatory challenges to jurors from one minority group "might be the kind of additional circumstantial evidence that would lead a judge to draw an inference of a more generalized discriminatory intent" and, therefore, that "it was possible to draw an inference of bias toward the Hispanic juror" based on the prima facie showing of bias toward the African-American jurors. Id.

Pointing out that "whether to draw an inference of discriminatory use of preemptories is an intensely case- and fact-specific question," however, the district court concluded that "such an inference was not compelled," so "there was no error . . . in declining to draw an inference of discriminatory targeting of the lone Hispanic juror because she could broadly be considered a 'minority,' like the black jurors." Id. Finally, the court rejected Gray's proposal "that peremptory challenges of jurors who variously fall with[in] different ethnic groups must be amalgamated" in assessing a Batson claim, observing that "neither the Supreme Court[,] nor . . . any other federal court, has adopted that view of the law." Id.

**II.**

Before delving into the merits of Gray's claim, we pause to note a threshold issue. The respondent argues that Gray's Batson claim was actually "adjudicated on the merits" by the state courts so as to prevent federal habeas relief unless their

decisions were "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d). Because this standard of review, by its terms, applies only to federal claims that were in fact "adjudicated on the merits" in state court, "[i]f the federal claim was never addressed by the state court, federal review is de novo." Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007). The respondent argues that, while the Massachusetts Appeals Court cited its own law, and not any federal law, in rejecting Gray's claim that the prosecutor should have been required to provide a group-neutral reason for striking the Hispanic juror, the court nevertheless adjudicated the federal aspect of that claim on the merits by applying "a state standard [that] is the functional equivalent of the federal standard."

As this argument suggests, "a state-court adjudication of an issue framed in terms of state law is nonetheless entitled to deference under section 2254(d)(1) as long as the state and federal issues are for all practical purposes synonymous and the state standard is at least as protective of the defendant's rights as its federal counterpart." Foxworth v. St. Amand, 570 F.3d 414, 426 (1st Cir. 2009). The federal standard for claims of group-based discrimination in jury selection entails a three-step inquiry:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge has been exercised on the basis of

race. Second, if that showing has been made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question . . . Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.

Rice v. Collins, 546 U.S. 333, 338 (2006) (citations omitted). The district court ruled that this standard offers greater succor to a defendant than its Massachusetts counterpart, under which, as "followed by the Appeals Court in this case, the obligation . . . to offer a 'group-neutral reason' for the challenge only arises after the judge has determined it is likely that there was a discriminatory reason for the challenge." 588 F. Supp. 2d at 142. The district court reasoned that the Appeals Court had thus applied "a 'more rigid standard than that established by Batson,'" which requires only a prima facie showing of discrimination at step one of the inquiry. Id. (quoting Aspen v. Bissonnette, 480 F.3d 571, 575 (1st Cir. 2007)).

The respondent argues that, while the Appeals Court did articulate the Commonwealth's "likelihood" standard in rejecting Gray's claim that the prosecutor had impermissibly stricken the Hispanic juror based on her group status, the court nevertheless applied a test that was functionally equivalent to the Supreme Court's prima facie standard. But we need not resolve that argument to resolve Gray's Batson claim because, as explained infra, we conclude that it fails even under a de novo standard of

-12-

review. Accordingly, we simply assume without deciding that, as the district court determined, the state courts did not adjudicate Gray's <u>Batson</u> claim on the merits so as to engender deferential review under § 2254(d)(1).

### III.

As he did in the district court, Gray advances three arguments in support of his claim that the state courts erroneously concluded that the prosecutor did not have to advance a group-neutral rationale for striking the Hispanic juror. First, he contends that the Superior Court mistakenly believed that Gray, because he is not Hispanic, could not object to the exclusion of an Hispanic juror. Second, he argues that the state courts wrongly ignored the evidence of discriminatory animus toward the African-American jurors in finding no discriminatory animus against the Hispanic juror. Third, he asserts that the state courts erred in evaluating the challenges to the Hispanic juror and the African-American jurors separately, as opposed to challenges directed at "minority jurors" as a class.

Like the district court, we find no merit in the first two claims. We also reject the third claim, because Gray has provided no evidence or authority for the proposition that "minorities"--a term he does not even attempt to define--constitute a "cognizable group" for <u>Batson</u> purposes, and we find none.

First, Gray is correct that "race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges," as the Supreme Court held in <u>Powers</u>, 499 U.S. at 416 (affirming a white defendant's right to challenge the discriminatory exclusion of African-Americans from the jury within the contemplation of <u>Batson</u>). As the district court observed, though, nothing in the record suggests that the Superior Court relied on the fact that Gray is not Hispanic in declining to ask the prosecutor to give a reason for excluding the Hispanic juror.

Indeed, the Superior Court took note of Gray's race only at the very outset, when it sua sponte noted the number of African-American panelists stricken by the prosecutor--and never mentioned Gray's race again, whether in its discussions of the Hispanic juror or otherwise. The Appeals Court, then, properly treated the Superior Court's not demanding an explanation for the prosecutor's striking the Hispanic juror as an implicit ruling that Gray had not made out a prima facie case of discrimination, rather than an implicit ruling that Gray could not challenge that juror's exclusion in the first place. <u>See</u> <u>United States</u> v. <u>Girouard</u>, 521 F.3d 110, 115 (1st Cir. 2008) (rejecting the argument that the trial court refused to consider religious discrimination in jury selection as prohibited by <u>Batson</u>, and treating the court's refusal to demand a reason for striking a Jewish juror as an implicit rejection of defendant's prima facie case instead).

That brings us to Gray's second argument: that, if the Superior Court indeed found no prima facie showing of discrimination against the Hispanic juror, that finding was wrong in light of the Superior Court's finding a prima facie case of discrimination against the African-American jurors. Like the district court, we accept the idea that, because Batson calls for a look at "all relevant circumstances" in deciding whether the defendant has made out a prima facie case of discrimination, 476 U.S. at 96, the exclusion of jurors from one minority group due to their race may support a prima facie case that a juror from another minority group was likewise excluded due to her race. See United States v. Stephens, 421 F.3d 503, 514 (7th Cir. 2005); Fernandez v. Roe, 286 F.3d 1073, 1079 (9th Cir. 2002); 6 Wayne R. LaFave et al., Criminal Procedure § 22.3(d), at 138-39 (3d ed. 2007). But, as the district court also observed, the inference is by no means compulsory. Cf. United States v. Mitchell, 502 F.3d 931, 957 (9th Cir. 2007) (noting that, despite the trial court's finding that the prosecutor had stricken Native Americans from the jury due to their race in violation of Batson, a prima facie case of discrimination against the stricken African American jurors did not necessarily follow), cert. denied, 128 S. Ct. 2902 (2008).

Gray's proposed rule would contravene Batson's command to evaluate "all relevant circumstances" at step one of the inquiry into the prosecutor's motives for striking particular jurors.

-15-

Instead, a trial judge would have to find a prima facie case of discrimination against the members of all minority groups excluded from the jury based on a prima facie case of discrimination against the members of only one such minority group.  There could be no consideration of the many other factors that speak--one way or the other--to a prima facie case of discrimination against each other such group.  See Aspen, 480 F.3d at 577.

As the district court reasoned, what to make of a prosecutor's striking members of multiple minority groups depends on a number of case-specific factors, including the races of the defendant, the witnesses, and any victim; the nature of the alleged offense; the anticipated theories, tactics, and approaches of trial counsel;  and what the district court called a "sense of local racial politics."  588 F. Supp. 2d at 146.  Again, these are among the relevant circumstances to which courts look in assessing  a defendant's prima facie Batson showing.  See, e.g., Holloway v. Horn, 355 F.3d 707, 723 (3d Cir. 2004) (considering the races of the defendant, victim, and witnesses, as well as the fact that the principal defense theory pitted the black defendant's credibility against a white policeman's).  They do not become irrelevant as to members of one minority group once a court finds a prima facie case of discrimination against members of another minority group.  So while we acknowledge that the exclusion of jurors of one minority group may indicate discrimination in the exclusion of jurors of

-16-

another minority group, we reject Gray's proposed rule that the former <u>must</u> indicate the latter.

Aside from that proposal, Gray offers nothing else to support a prima facie case of discriminatory animus in the Commonwealth's peremptory challenge to the Hispanic juror. Gray does not explain, with reference to any of the criteria just discussed or otherwise, how the Commonwealth's perceived bias against the African-American jurors--in this particular case--translates into bias against the Hispanic juror. Nor does Gray point to anything else that would tend to suggest such bias. All we can tell from the record is that the Commonwealth used one of its six peremptory challenges against one Hispanic juror, out of an unknown number of Hispanic jurors on both the original panel and in the venire.[2] <u>Cf. Aspen</u>, 480 F.3d at 577 (listing statistics relevant to <u>Batson</u> claims to include "the percentage of strikes directed against members of a particular group, the percentage of a particular group removed from the venire by the challenged

---

[2]We acknowledge that defense counsel characterized the rest of the originally constituted panel--aside from the four jurors identified as African-American jurors and the one juror identified as Hispanic--as "nine white jurors." But, as defense counsel's initial misidentification of the Hispanic juror as African-American suggests, visual observation alone is not always the most accurate way to discern race. <u>Cf. United States</u> v. <u>Ochoa-Vasquez</u>, 428 F.3d 1015, 1043 (11th Cir. 2005) (noting, in a case with an anonymous jury, that the court had properly rejected a <u>Batson</u> challenge founded on the alleged striking of Hispanic jurors, because "one could not identify Hispanic jurors in this particular case simply by their appearance," as shown by defense counsel's misidentification of several Hispanic jurors as white).

-17-

strikes, and a comparison of the group's representation in the venire to its representation on the jury"). This court has cautioned that such gaps in the record count against the defendant's <u>Batson</u> claim on habeas review. <u>See</u> <u>Caldwell</u> v. <u>Maloney</u>, 159 F.3d 639, 654 (1st Cir. 1998).

Furthermore, even if we assume that the prosecutor struck the only Hispanic member of the panel, "the mere fact that the prosecutor challenges the only juror of a particular race, without more, does not automatically give rise to an inescapable inference of discriminatory intent . . . . [A petitioner] who advances a <u>Batson</u> argument ordinarily should come forward with facts, not just numbers alone." <u>Bergodere</u>, 40 F.3d at 517. The record is devoid of any facts suggesting the prosecutor's animus toward the Hispanic juror, such as making telltale statements during jury selection, or declining to strike jurors of other races who were similarly situated to the Hispanic juror.[3] <u>Cf.</u> <u>Aspen</u>, 480 F.3d at 577 (noting the relevance of these facts to the prima facie inquiry).

Indeed, the only information disclosed by the Hispanic

---

[3]At oral argument, Gray made much of the fact that, after the prosecutor's challenges to the two African-American jurors had been questioned, he asked to withdraw the only peremptory challenge he had yet to make against a white juror. But the prosecutor did so in advancing a race-neutral reason for striking one of the African-American jurors, i.e., that juror, like the white juror, lived in the neighborhood where the alleged crimes had occurred. We see the prosecutor's request to withdraw his challenge to the white juror, then, as an effort to show the bona fides of his challenge to the African-American juror, rather than as any revelation that the prosecutor was trying to seat as many white jurors as possible.

juror during voir dire (besides the fact that she did not consider herself "a person of color") was that she had recently been a defendant in a criminal case. That not only gave her something in common with one of the African-American jurors stricken by the prosecutor--and stricken for precisely that reason, in fact--but provided an apparent non-discriminatory basis for striking her, which is another factor cutting against a prima facie case of discrimination. See id. In the final analysis, then, there is no record support for a prima facie case of discrimination against the Hispanic juror, apart from the prima facie case of discrimination against the African-American jurors; and there is no record support for inferring discrimination against Hispanics from discrimination against African-Americans in this particular case.[4]

That brings us to Gray's third argument: that analyzing a prima facie case as to African-American jurors, on one hand, and Hispanic jurors, on the other, is itself mistaken because the relevant "cognizable group" for purposes of his Batson challenge was "minority jurors." Part of a defendant's burden in making out a prima facie case of a Batson violation is to "show that the strike was used on a juror who is a member of a cognizable group

---

[4]Gray offers the hypothetical case of a prosecutor who "stand[s] before a trial judge and state[s], 'I am now going to eliminate any juror who belongs to a minority group because I favor the selection of white majority jurors to the jury.'" But the record contains no such statement here nor, as just discussed, evidence sufficient to make out a prima facie case of intentional discrimination against any discrete group but African-Americans.

that has been or is currently subjected to discriminatory treatment." United States v. Marino, 277 F.3d 11, 23 (1st Cir. 2002) (quotation marks, ellipsis, bracketing, and citation omitted). While the Supreme Court has treated both African-Americans, see Batson, and Hispanics, see Hernandez, as a "cognizable group" in this sense, it has never passed upon whether "minorities"--a term that Gray does not define, but that presumably includes African-Americans and Hispanics at a minimum--fit that description in the aggregate.[5] Gray provides no authority from any court simply treating "minorities" as the relevant "cognizable group" for purposes of a Batson challenge in the way he urges. The only authority we know of is to the contrary. See California v. Davis, 208 P.3d 78, 115 (Cal. 2009); New York v. Smith, 613 N.E.2d 539, 540 (N.Y. 1993).

Whether a "cognizable group" exists for purposes of a Batson claim presents a factual inquiry, Marino, 277 F.3d at 23, requiring proof that "that (1) the group is definable and limited by some clearly identifiable factor, (2) a common thread of attitudes, ideas, or experiences runs through the group, and (3) a

---

[5]We do not doubt, of course, that either African-Americans or Hispanics constitute a "cognizable group" for Batson purposes. But, as Gray himself argues, that is a different question from whether "minorities" constitute such a group. Cf. Green v. Travis, 414 F.3d 288, 296-98 (2d Cir. 2005) (ruling that state court unreasonably rejected a defendant's Batson challenge to the exclusion of Black and Hispanic jurors as a challenge to the exclusion of "minority" jurors).

community of interests exists among the group's members, such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process." Murchu v. United States, 926 F.2d 50, 54 (1st Cir. 1991). At no stage of his state or federal proceedings has Gray provided any factual support--or, for that matter, even any developed argument--for his assertion that "minorities" possess these necessary characteristics of a "cognizable group." Gray simply assumes, and asks us to assume, that "minorities" are such a group. Making such an assumption would be contrary to this court's precedent, which, again, demands factual support for such a claim. See id.; United States v. Bucci, 839 F.2d 825, 833 (1st Cir. 1988); United States v. Sgro, 816 F.2d 30, 33 (1st Cir. 1987).

Furthermore, even were we free to rule that "minorities" constitute a "cognizable group" despite the lack of any record support, we would decline to do so, because that conclusion is hardly free from doubt. As other federal courts have noted in rejecting claims of discrimination against "non-whites" in jury selection, it is open to serious question whether such a class of persons possesses the definable quality, common thread of attitudes or experiences, or community of interests essential to recognition as a "group." See, e.g., United States v. Suttiswad, 696 F.2d 645, 649 (9th Cir. 1982) ("Any group which might casually referred to as 'non-whites' would have no internal cohesion . . . . Certainly,

-21-

the members of such a group would have diverse attitudes and characteristics which would defy classification.") (quotation marks omitted); <u>United States</u> v. <u>Daly</u>, 573 F. Supp. 788, 791-92 (N.D. Tex. 1983) (rejecting the argument, in the absence of evidentiary support, that "non-whites" are a cognizable group simply because it "comprises distinct subgroups" which are themselves cognizable); <u>United States</u> v. <u>Marcano</u>, 508 F. Supp. 462, 469 (D.P.R. 1980) (Torruella, J.) (considering "non-whites" as comprising "several cognizable groups," not one).

Accordingly, with no evidentiary showing whatsoever, we cannot assume that "minorities" constitute the "cognizable group" essential to showing that the prosecutor intentionally discriminated against such a group in his or her use of peremptory challenges in violation of <u>Batson</u>. We reject Gray's argument for habeas relief based on the state courts' refusal to find a prima facie case of discrimination against "minorities."

**IV.**

For the foregoing reasons, we **<u>AFFIRM</u>** the district court's denial of Gray's petition for a writ of habeas corpus.