# United States Court of Appeals
## For the First Circuit

No. 19-1343

SOULEYMANE YACOUBA-ISSA,

Petitioner, Appellant,

v.

DANIEL CALIS, JR., Superintendent,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Lynch, Selya, and Barron,
Circuit Judges.

Ruth Greenberg, with whom Janice Bassil, James Budreau, and Bassil & Budreau, LLP, were on brief, for appellant.
Eva Marie Badway, Assistant Attorney General, with whom Maura Healey, Attorney General, was on brief, for appellee.

January 10, 2022

**BARRON**, **Circuit Judge**. In 2011, following a jury trial in Massachusetts Superior Court, Souleymane Yacouba-Issa was convicted of first-degree murder under Massachusetts law and sentenced to a prison term of life. Yacouba-Issa appealed his conviction in state court based on, among other grounds, a claim of race-based discrimination in jury selection under Batson v. Kentucky, 476 U.S. 79 (1986). After the state court denied his appeal, Yacouba-Issa filed a petition for habeas relief in the United States District Court for the District of Massachusetts based on Batson. The District Court denied the petition, and Yacouba-Issa now appeals based on its treatment of his Batson-based claim for habeas relief. We affirm.

## I.

In Batson, the Supreme Court of the United States set forth a three-step inquiry for evaluating a claim that a prosecutor's use of a peremptory challenge to strike a prospective juror constitutes purposeful race-based discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. See Batson, 476 U.S. at 96-98. The first step requires that the defendant establish "a prima facie case of purposeful discrimination." Id. at 96. A defendant who makes that showing triggers Batson's second step, at which the burden shifts "to the State to come forward with a neutral explanation for challenging" the prospective juror. Id. at 97. Then, at step three, the court

- 2 -

must assess the prosecutor's explanation, along with other relevant factors, to "determine if the defendant has established purposeful discrimination." Id. at 98.

The Supreme Court clarified the showing required at Batson's first step in Johnson v. California by explaining that this step is not "so onerous that a defendant would have to persuade the judge . . . that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination occurred." 545 U.S. 162, 170 (2005). The Court explained that although the ultimate "burden of persuasion 'rests with, and never shifts from, the opponent of the strike,'" the "'persuasiveness of the justification'" becomes relevant only at Batson's third step, "'in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.'" Id. at 171 (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)).

On direct appeal to the Supreme Judicial Court of Massachusetts (SJC) pursuant to Massachusetts General Law chapter 278, section 33E, Yacouba-Issa argued pursuant to Batson that the prosecutor at his murder trial had moved to use a peremptory challenge to strike "[t]he only potential black male juror . . . in the venire," leaving "no black male juror on the

- 3 -

jury."  Yacouba-Issa further argued that in challenging that strike at that time under Batson he had "produc[ed] evidence sufficient to permit the trial judge to draw an inference that discrimination ha[d] occurred," thereby establishing a prima facie case of purposeful race-based discrimination under the first step of Batson.  See Batson, 476 U.S. at 96-98.  Accordingly, Yacouba-Issa argued that the trial judge's failure to proceed to Batson's second step and ask the prosecutor to explain her reason for the strike constituted a "mistake of law" that denied Yacouba-Issa "his constitutional right to a jury selected free from discrimination," such that his first-degree murder conviction could not stand.

The SJC in 2013 rejected Yacouba-Issa's Batson claim, along with the other challenges that he had made to his conviction. See Commonwealth v. Issa, 992 N.E.2d 336, 346, 354 (Mass. 2013). Yacouba-Issa then filed a motion in state trial court for a new trial in which he raised still other challenges to his conviction. The state trial court denied this motion, and Yacouba-Issa petitioned for the SJC to review that ruling, pursuant to Massachusetts General Law chapter 278, section 33E. In October 2016, the SJC denied Yacouba-Issa's petition.

Later that same month, Yacouba-Issa filed this petition for federal habeas relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Massachusetts. See Yacouba-Issa v. Calis, No. 16-cv-12124, 2019 WL 1332922, at *4

- 4 -

(D. Mass. Mar. 25, 2019). The petition challenges Yacouba-Issa's first-degree murder conviction on various grounds, including one that is based on the Batson claim that the SJC rejected on direct appeal.

Under 28 U.S.C. § 2254, a federal district court may not grant a petition for habeas relief that challenges a state court judgment that "adjudicated [the claim] on the merits" unless the state court judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The District Court denied Yacouba-Issa's petition for habeas relief, including as to its request for relief based on Batson. See Yacouba-Issa, 2019 WL 1332922 at *8, *15. However, the District Court did grant Yacouba-Issa a certificate of appealability as to its ruling denying his Batson-based claim for habeas relief, and he then filed the timely appeal that is now before us. See id. at *15.

**II.**

In seeking to overturn the District Court's ruling denying his federal habeas petition, Yacouba-Issa makes various contentions regarding the District Court's treatment of his claim

- 5 -

for relief based on Batson. We thus need to describe more precisely the contours of the Batson-based request for habeas relief that is before us in this appeal.

To that end, we first address Yacouba-Issa's most promising contention on appeal regarding Batson. In it, Yacouba-Issa contends that the District Court erred in denying him relief based on Batson, because the record shows that the prosecutor struck the sole Black male available to sit on the jury, and "[c]omparative juror analysis shows that identically situated white male jurors were seated" who were not subjected to the concerns about their ability to be fair that the prosecutor expressed during the questioning of the Black male prospective juror that she struck. On that basis, he contends, he satisfied the first step of the Batson inquiry by establishing a prima facie case that the prosecutor engaged in purposeful race-based discrimination during jury selection, such that the trial court was obliged to do what it failed to do: proceed to the second step of the Batson inquiry and ask the prosecutor to explain her reason for striking the prospective juror in question.

The problem with this contention is that the District Court correctly found that Yacouba-Issa's federal habeas petition does not advance any contention regarding comparative juror analysis in pressing a claim for habeas relief based on Batson. See Yacouba-Issa, 2019 WL 1332922 at *7. Thus, as no Batson-based

claim for habeas relief of that sort is properly before us here, it cannot provide a basis for our overturning the District Court's ruling denying Yacouba-Issa's petition for federal habeas relief. See Puleio v. Vose, 830 F.2d 1197, 1202 (1st Cir. 1987) ("Under well settled principles, we need not -- indeed, should not -- consider matters which were not raised below.") (citing United States v. Figueroa, 818 F.2d 1020, 1025 (1st Cir. 1987)).

Yacouba-Issa also asserts in this appeal that the District Court erred in denying his federal habeas petition even if we understand that petition to have advanced only a more limited claim for habeas relief based on Batson. Here, Yacouba-Issa contends that the District Court erred in denying his petition for habeas relief based on Batson because the record before the trial judge in his murder case in state court showed that the prosecutor had used a peremptory challenge to strike "the only potential black male juror (the Petitioner's grouping in the community) in the venire," where "only one other black juror" -- a woman -- "had been seated," and the trial judge did not then ask the prosecutor to explain her reason for striking that prospective juror. In other words, in this variant of the claim for habeas relief based on Batson that Yacouba-Issa asks us to address, he contends that he made out the requisite prima facie case at Batson's first step simply by showing that the prosecutor used a preemptory challenge

- 7 -

to strike the sole Black male prospective juror remaining in the venire.

Yacouba-Issa did raise this stripped-down claim for habeas relief based on Batson in his federal habeas petition, as the District Court agreed. See Yacouba-Issa, 2019 WL 1332922 at *5, *7-8. The District Court concluded, however, that the SJC's ruling on that Batson claim was entitled to deferential review under 28 U.S.C. § 2254 and that its ruling rejecting that claim must be upheld, because it reasonably applied Supreme Court precedent in rejecting that claim. Id. at *7-8. And while Yacouba-Issa contends that the District Court erred in so concluding, we see no basis for overturning this aspect of the District Court's ruling after reviewing it de novo. See Scott v. Gelb, 810 F.3d 94, 98 (1st Cir. 2016); Sanchez v. Roden, 753 F.3d 279, 293 (1st Cir. 2014).

As the District Court recognized, the SJC did not rule as a categorical matter that such a numbers-based Batson claim as Yacouba-Issa had asserted to it cannot suffice to establish a prima facie case of race-based discrimination under Batson's first step. See Issa, 992 N.E.2d at 345; Yacouba-Issa, 2019 WL 1332922 at *8. Rather, the SJC concluded, based on its own state law rulings, only that such a Batson claim failed on the record before it because of the specific circumstances in which the underlying strike of the sole Black male remaining in the venire occurred.

See *Issa*, 992 N.E.2d at 344-45 (citing, among others, Commonwealth v. *Soares*, 387 N.E.2d 499, 515-16 (Mass. 1979), Commonwealth v. *Harris*, 567 N.E.2d 899, 903 (Mass. 1991), Commonwealth v. *Prunty*, 968 N.E.2d 361, 371-72 (Mass. 2012), and Commonwealth v. *Garrey*, 765 N.E.2d 725, 733 (Mass. 2002)).

The SJC recognized the question to be "close" and stated that "the judge in his discretion may have found a prima facie case here." Id. at 345. Nevertheless, the SJC concluded that the judge's decision not to have so found was supportable because the particular "circumstances" of this strike "diminished the likelihood that the reason for the prosecutor's challenge to the only African-American male in the venire was solely the prospective juror's race and gender." Id. at 346.[1]

In so ruling, the SJC pointed first to the fact that, as Yacouba-Issa himself puts it, "one other black juror" -- a woman from Kenya -- was seated. See *Issa*, 992 N.E.2d at 345-46 & n.11.

---

[1] We have previously held that the state court rulings that the SJC relied on here in rejecting Yacouba-Issa's Batson challenge -- as we have just described its contours -- are "at least as protective as" Batson itself. *Scott*, 810 F.3d at 99 & n.3. The SJC recently acknowledged that "the language of Soares continues to sow confusion" in Massachusetts courts, and rejected any contention that "the requirements of Soares . . . are at odds with the requirements of Batson." Commonwealth v. *Sanchez*, 151 N.E.3d 404, 423 (Mass. 2020). Although the SJC had not made this clarification at the time it decided Yacouba-Issa's case, given its parallel citation to Batson and its recognition that "a pattern of one" can constitute a pattern of discrimination, *Issa*, 992 N.E.2d at 344, we proceed under the assumption that it applied a state law standard at least as protective as Batson.

- 9 -

The SJC next pointed out "that both the defendant and the victim were African-American, so any inference of bias in jury selection arising from an interracial killing was not warranted." Id. at 346. And, finally, the SJC noted the prosecutor's comment prior to striking the sole Black male prospective juror that the prospective juror "look[ed] very familiar," even though she withdrew that comment before exercising her strike. Id. The SJC referred in this connection to the following exchange that occurred in the trial court prior to the striking of that prospective juror:

> THE COURT: Any other questions for this prospective juror?
>
> [PROSECUTOR]: Did you ask him if he had any strong feelings towards prosecutors or --
>
> THE COURT: I did ask if his experience had left him with feelings about the participants or the people involved, whether it was district attorneys, judges, defense attorneys, and he said no. Any other questions for this prospective juror?
>
> . . . .
>
> [PROSECUTOR]: No, Your Honor. I will say that he looks very familiar to me and I'm just trying to place him.
>
> THE COURT: All right. But at this point there's nothing that you --
>
> [PROSECUTOR]: No.

Yacouba-Issa does not identify any basis for concluding that the SJC, in ruling as it did on this variant of the Batson

- 10 -

claim, erred in its fact finding. See 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, to evaluate his challenge to the District Court's rejection of this variant of his Batson-based claim for habeas relief, we need resolve only whether the SJC's rejection of that same variant of the Batson claim was "contrary to" or "involved an unreasonable application of" then-clearly established United States Supreme Court case law, as required by 28 U.S.C. § 2254(d)(1). See Scott, 810 F.3d at 100.

Yacouba-Issa's federal habeas petition does not assert that the SJC acted "contrary to" such law in ruling as it did on that variant of the Batson claim. He does, however, advance one such contention on appeal to us. Specifically, he contends that the SJC acted "contrary to" Johnson, 542 U.S. at 170, when it explained that "[t]he issue on appeal . . . is not whether the judge was permitted to find that the presumption had been rebutted, but whether he was required to have so found," Issa, 992 N.E.2d at 345.

Even if we were to assume that this "contrary to" argument is not waived for lack of development below, it is without merit. The statement in Johnson that "a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred," Johnson, 545 U.S. at 170, does not conflict with the statement by the SJC to which Yacouba-Issa

- 11 -

directs our attention.  The SJC merely explained in that statement that a trial court abuses its discretion in not moving to Batson's second step only when the record required the trial court to find that an inference of discrimination was permitted.  See Issa, 992 N.E.2d at 345.  Indeed, the abuse of discretion standard that the SJC applied in its review of the trial court's determination on that score is no more deferential than the clear error standard that this court applies when reviewing such determinations on direct appeal from the federal district courts.  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401 (1990) ("When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable . . . ."); United States v. Girouard, 521 F.3d 110, 116-17 & n.12 (1st Cir. 2008) (applying clear error review).

We turn, then, to Yacouba-Issa's contention that the District Court erred in ruling as it did with respect to this more limited Batson-based claim for habeas relief because the SJC's ruling rejecting the similarly limited variant of the Batson claim that it addressed "involved an unreasonable application" of then-"clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  But, here, too, we see no merit to Yacouba-Issa's contention.

No clearly established United States Supreme Court case law as of the time that the SJC rendered its decision in 2013

mandated a determination that a Batson claim of the sort that Yacouba-Issa raised to the SJC established the "prima facie case of purposeful discrimination" required under Batson's first step, Batson, 476 U.S. at 96-98. See Scott, 810 F.3d at 102-03. In arguing otherwise, Yacouba-Issa does refer to Johnson's test. But, insofar as he means to suggest in doing so that Johnson mandates such a determination, we cannot agree. Nothing in Johnson's statement that "a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred" clearly establishes that the prosecutor's strike of the sole Black male prospective juror in the venire in and of itself required the trial court to find that Yacouba-Issa had made out the prima facie case of race-based discrimination required at Batson's first step. Johnson, 545 U.S. at 170. And we see nothing else in Johnson -- a case in which "all three African-American prospective jurors were removed from the jury" such that the "resulting jury, including alternates, was all white" -- that would provide support for such a conclusion. Id. at 164, 173 (quotation marks and citation omitted).

Yacouba-Issa's memorandum in support of his petition for habeas relief does describe the seating of the Black woman on the jury and the race of the victim as "irrelevant." But, even if that were so, we do not see how the SJC's consideration of those

two factors shows that its ruling rejecting the Batson claim that it was presented with involved an unreasonable application of clearly established Supreme Court case law, given that the SJC's rejection of that Batson claim was not an unreasonable application of any such law insofar as that claim was based solely on the strike of the one Black male remaining in the venire. Nor does Yacouba-Issa persuasively explain how the SJC's consideration of either of those two factors could support such a conclusion if the fact of the strike alone could not.[2]

Yacouba-Issa could be understood to be making one further contention in this appeal with respect to Batson. He could be understood to be arguing that the prosecutor's statement that the Black male prospective juror that was struck "looks very familiar" before the prosecutor then withdrew that statement and struck that prospective juror, combined with the fact of the strike itself, compelled the conclusion under then-clearly-established Supreme Court precedent that a prima facie case of race-based discrimination under Batson's first step had been made. In this regard, Yacouba-Issa suggested in his memorandum in support of his

_____

[2] Yacouba-Issa does state in the "statement of facts" of his opening brief to us on appeal that "[t]his case, while not an interracial killing, did involve a black male defendant married to a white woman; a pairing historically subjected to prejudice [] both by white people and by black women as well." But, Yacouba-Issa did not make any such contention below or to the SJC, and so we do not consider it here.

federal habeas petition that the statement by the prosecutor about the prospective juror looking familiar provided a basis for concluding that "the prosecutor was fishing for" a reason to strike that prospective juror and that the possibility that the prosecutor was "fishing," when combined with the fact of the strike, compelled a finding that such a prima facie case had been established.

Generously read, Yacouba-Issa's federal habeas petition could be understood to advance this augmented variant of the more limited Batson-based claim for habeas relief that we have already addressed, notwithstanding the District Court's finding to the contrary. See Yacouba-Issa, 2019 WL 1332922 at *7. But, even assuming that this moderately-enhanced version of his Batson-based claim for habeas relief is properly before us, it, too, supplies no basis for overturning the District Court's ruling denying him habeas relief, even though our reasons for affirming differ somewhat from those that the District Court gave in ruling as it did. See Pike v. Guarino, 492 F.3d 61, 71 (1st Cir. 2007) ("[W]e may affirm the district court's denial of habeas relief on any ground made manifest by the record . . . .").

On appeal, Yacouba-Issa at most could be understood to have argued to us that the SJC unreasonably applied clearly established Supreme Court case law in concluding that the prosecutor's statement that we have just referenced, combined with the fact of the strike of the one Black male available to serve as

a juror, did not establish the prima facie case of purposeful race-based discrimination that Batson's first step requires, even if the strike of that one Black make prospective juror in and of itself did not. But, for that argument to have merit, the SJC must have made an error in so ruling that is "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). And, given that the SJC made no such error in rejecting the contention that the fact of the strike of the one Black male remaining in the venire in and of itself established the prima facie case under Batson, we cannot say that the SJC made such an error in reaching the same conclusion after accounting for the colloquy in which the prosecutor adverted to a characteristic of the prospective juror in question -- his familiarity -- that did not on its face betray a race-based reason for striking that prospective juror. See Aspen v. Bissonnette, 480 F.3d 571, 578 (1st Cir. 2007) ("Aspen's emphasis on the raw number of strikes made against men loses force when this species of numeric evidence is considered in context."); Gray v. Brady, 592 F.3d 296, 303 (1st Cir. 2010) (explaining that "what to make of a prosecutor's striking members of multiple minority groups depends on a number of case-specific factors"); Batson, 476 U.S. at 97 (emphasizing that "trial judges" will consider "the circumstances concerning the prosecutor's use of peremptory challenges").

## III.

The judgment of the District Court is therefore **affirmed**.